UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES SACCO,

        Petitioner,

vs.                             Case No. 3:12-cv-1250-J-39PDB

SECRETARY, DOC, et al.,

        Respondents.

_____

## ORDER

Petitioner initiated this action by filing a pro se Petition (Petition) (Doc. 1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 7, 2012.[1] Petitioner challenges a 2010 state court (Columbia County) judgment of conviction for attempted sexual battery upon a child under twelve years of age. As relief, Petitioner seeks a *nunc pro tunc* competency hearing, claiming he is "organically mentally impaired" and his defense counsel failed to request "a proper competency hearing."[2] Petition at 41. In the Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus

---

[1] Giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date he signed it and presumably handed it to prison authorities for mailing to this Court. See Houston v. Lack, 487 U.S. 266, 276 (1988). The Court will also give Petitioner the benefit of the mailbox rule with respect to his pro se filings in state court when calculating the one-year limitation period under 28 U.S.C. § 2244(d).

[2] Petitioner states that he "was evaluated by one (1) single psychologist[.]" Petition at 13.

(Response) (Doc. 21),[3] Respondents argue that the Petition must be dismissed as untimely.  Petitioner has submitted a Reply to State's Respondent's Motion to Dismiss and Request for Federal Evidentiary Hearing (Reply) (Doc. 25).  See Order (Doc. 11).

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered

---

[3] The Court hereinafter refers to the Exhibits submitted in support of the Response as "Ex."

through the exercise of due
diligence.

(2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the
pertinent judgment or claim is pending shall
not be counted toward any period of limitation
under this subsection.

28 U.S.C. § 2244(d).

On September 13, 2010, Petitioner was adjudicated guilty of
attempted sexual battery upon a child under twelve years of age and
sentenced to fifteen years of imprisonment followed by fifteen
years of sexual predator probation pursuant to a plea agreement.
Ex. 4; Ex. 5.  Petitioner did not file a direct appeal.  Petition
at 2.  Thus, Petitioner's judgment became final thirty days later
on October 13, 2010.  See Fla. R. App. P. 9.140(b)(3); Saavedra v.
State, 59 So.3d 191, 192 (Fla. 3rd DCA 2011); Gust v. State, 535
So.2d 642, 643 (Fla. 1st DCA 1988) (holding that, when a defendant
does not file a direct appeal, the conviction becomes final when
the thirty-day period for filing a direct appeal expires).
Petitioner's one-year limitation period began to run on October 14,
2010, and ran until it expired on October 14, 2011.

Petitioner filed a pro se Rule 3.850 post-conviction motion on
January 12, 2012; however, even assuming arguendo that this
application for post conviction relief was properly filed, it did
not toll the federal one-year limitation period because it had
already expired.  Ex. 7.  See Tinker v. Moore, 255 F.3d 1331, 1334-

3

35 (11th Cir. 2001) (holding that, even though Florida law allows a prisoner two years to file a Rule 3.850 motion, the prisoner must file the motion within one year after his conviction becomes final in order to toll the one-year limitation period), cert. denied, 534 U.S. 1144 (2002); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.) (per curiam) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period.  A state-court petition like [Petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), cert. denied, 531 U.S. 991 (2000).  Thus, this action was not timely filed.

Petitioner apparently concedes that his Petition was not timely filed, but argues that the Court should reach the merits of the Petition, claiming entitlement to equitable tolling and the "manifest injustice exception." Petition at 9.  The United States Supreme Court has established a two-prong test for equitable tolling of the one-year limitation period, stating that a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that equitable tolling "is a remedy that must be used sparingly"); see also Brown v. Barrow, 512 F.3d 1304,

1307 (11th Cir. 2008) (per curiam) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.") (citation omitted).

An allegation of mental incompetency, without a showing of a causal connection between the incompetence and the failure to file a timely application, does not justify equitable tolling. Lawrence v. Florida, 421 F.3d 1221, 1226-27 (11th Cir. 2005); see also Fox v. McNeil, 373 F. App'x. 32, 34 (11th Cir. 2010) (per curiam) (finding the petitioner had not met his burden to prove that equitable tolling was appropriate where he had "failed to establish a causal link between his claims of mental incompetence and the untimely filing of his federal habeas corpus petition"), cert. denied, 131 S.Ct. 1047 (2011).

Indeed, "mental impairment is not per se a reason to toll a statute of limitations." Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam) (citation omitted). Petitioner is required to show that his mental illness was so profound and debilitating that he was unable to file a timely habeas petition, given his mental limitations. Lewis v. Howerton, No. 1:07-cv-2803-JEC-WEJ, 2012 WL 4514044, at *16 (N.D. Ga. Sept. 30, 2012) ("the question before the Court is whether the mental illness [petitioner] suffered was so profound and debilitating that he

would have been unable to file a timely habeas petition, given these limitations").

Thus, the question before the Court is whether Petitioner has demonstrated that he was mentally incapable of filing a federal habeas corpus petition in a timely manner during the pertinent time period, which is October 14, 2010 (the day after his conviction became final), through October 14, 2011 (the day the limitation period expired).

The docket in the Columbia County case (case no. 2010-351-CF) does not reflect that Petitioner was found to be incompetent to proceed at any time before accepting his guilty plea.  Ex. 1. Furthermore, there is no record of treatment or any sort of diagnosis of psychological issues or mental disorders other than Petitioner's conclusory assertion that his IQ score is well bellow 60, he suffers from mental retardation and a learning disability, and he suffers from mental illness and incapacity due to organic brain damage paired with seven different disassociated diseases/disorders.  Petitioner at 8; Ex. 13.  The only records before the Court are prison test scores conducted after the relevant period at issue dated November 22, 2011, Ex. 7 at 27, and June 27, 2012, Ex. 13, Exhibit G.  These test scores, standing alone, are insufficient to demonstrate Petitioner was mentally incapable of filing a federal habeas corpus petition in a timely

manner during the period from October 14, 2010 through October 14, 2011.

Petitioner has not provided any documentation or other evidence that he has been diagnosed as mentally retarded or submitted any test results showing his IQ. See Boone v. United States, No. 05-00265-WS-N, 2014 WL 852359, at *5 (S.D. Ala. Mar. 5, 2014) (finding the petitioner failed to provide sufficient evidence to demonstrate that he has a significant mental disability that prevented him timely submitting his federal petition). Even assuming the test scores support a claim of mental retardation, he has failed to show any connection between his alleged disability and his inability to timely file a federal habeas petition. See Taylor v. Lightner, No. 14-00156-WS-N, 2015 WL 3407622, at *5 (S.D. Ala. May 27, 2015) (concluding that the petitioner failed to present evidence in support of his assertion or shown any causal connection between the alleged mental deficiency and his ability to timely file his petition).

In addition, "the record contains no evidence probative of Petitioner's alleged mental disorder." Scott v. Tucker, No. 3:11cv64/WS/EMT, 2012 WL 1314087, at *6 (N.D. Fla. Mar. 15, 2012) (Not Reported in F.Supp.2d) (holding a conclusory assertion of inability to understand and appreciate federal law and procedure due to a mental disorder is insufficient to satisfy the requirements for finding entitlement to equitable tolling), report

and recommendation adopted by Scott v. Tucker, 2012 WL 1313500
(N.D. Fla. Apr. 17, 2012). See Cardenas v. United States, Nos.
8:06-cv-589-T-24 MAP, 8:04-cr-141-T-24, 2010 WL 4537053, at *2
(M.D. Fla. Nov. 3, 2010) (Not Reported in F.Supp.2d) (finding a
conclusory allegation of the existence of mental impairment
insufficient to support a claim for equitable tolling).

The following portions of the September 13, 2010 plea colloquy
in the Columbia County case tend to show that Petitioner was
competent when he entered his plea.[4]  The proceedings began with
Petitioner's counsel announcing that there is a written offer of
plea.[5]  Plea and Sentencing Hearing (Doc. 29-1) at 2.  The
prosecutor proceeded to announce the charge by information of
sexual battery upon a child under the age of twelve with a
mandatory punishment of life imprisonment, and Petitioner's
decision to plead guilty to the lesser included charge of attempted
sexual battery upon a child under the age of twelve, a first degree
felony, punishable by up to thirty years in prison. Id.  He then
noted that Petitioner would be sentenced to fifteen years in

---

[4] As far as the question of competency, there is nothing in
the record that shows that Petitioner was incapable of having an
appreciation of the charges against him; an appreciation of the
range and nature of the possible penalties; an understanding of the
adversary nature of the legal process; the capacity to disclose to
his attorney facts pertinent to the proceedings; the ability to
manifest appropriate courtroom behavior; and the capacity to
testify relevantly.

[5] The written "Offer of Plea" is signed by both Petitioner and
his counsel.  Ex. 4.

prison, and upon his release from prison, he would be on fifteen years of sexual predator probation and subject to electronic monitoring, as well as various other conditions and requirements. Id. at 2-6. The prosecutor referred to the factual basis for the plea. Id. at 7-8. The court conducted the following plea colloquy:

> THE COURT: Mr. Sacco, you promise any testimony you give today is the truth, so help you God?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You've heard all the announcements by the attorneys. Everything you've heard announced in court, have you agreed to that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you feel forced or threatened in any way?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Satisfied with the representation of your good attorney, Mr. Baker?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: How old are you?
>
> THE DEFENDANT: Forty-four sir.
>
> THE COURT: And how far did you go in school?
>
> THE DEFENDANT: I went -- I went a year to college. I got six credits.
>
> THE COURT: Fair to say that you're alert and intelligent?
>
> THE DEFENDANT: Yes. sir.

THE COURT: Can see, hear and understand the Court?

THE DEFENDANT: Yes, sir.

THE COURT: Not under the influence of any kind of medication, alcohol or illegal drugs?

THE DEFENDANT: No, sir.

THE COURT: Able to communicate with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And you signed this offer of plea freely and voluntarily, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand the extensive requirements of probation and the sexual offender and predator laws?

THE DEFENDANT: Yes, sir.

THE COURT: And all that will be given to you here in writing.  The -- all the terms and conditions including a $500 find are special conditions of your probation.  If you don't get a job and pay a little bit weekly on all of this, you could be brought back here found in violation of probation and sentenced to prison.  You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you violate any of your other terms or conditions, you could be brought back here and sentenced to prison.  You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.

MR. DURRETT [the prosecutor]: Your Honor, if I might, some concerns were raised to me through

meeting with the family as to Mr. Sacco's ability to read and write. And I just want to ensure that Mr. Sacco had the opportunity to, at the very least, go over in great length with his attorney the terms of the plea to which he's entered today.

MR. BAKER [defense counsel]: Your Honor, specifically, Mr. Sacco and I did discuss that issue. He was provided a copy of the plea agreement well before I went to discuss it with him. And he and I went over the plea agreement and we -- I also asked if he had any questions. Specifically about any of the provisions contained within the plea agreement. I would indicate to you that he specifically had made some inquiries about whether or not electronic monitoring would be a -- would be required the length of the pleaing [sic] and wanted me to attempt to negotiate with respect to the electronic monitoring. What I told him was, is that was required by statute and could not be negotiated. And to me, that indicates an understanding of the terms of the plea.

THE COURT: Is that correct?

THE DEFENDANT: Yes.

THE COURT: You said, yes?

THE DEFENDANT: Yes, sir.

THE COURT: You've gone over every word of this plea with your attorney, is that correct?

THE DEFENDANT: I had somebody read it to me where I am. But, yeah, I'm agreeing with it, what's in that, sir.

THE COURT: You have any questions at all today about it?

THE DEFENDANT: No, I'm just -- I want to go down the road, sir.

THE COURT: Okay.

11

Id. at 8-11.

The Court concluded the proceedings by stating, in pertinent

part:

> THE COURT: Well, the defendant says he has no
> questions, satisfied with his lawyer, agrees
> with the terms and conditions, we've
> stipulated to factual basis.
>
> MR. BAKER: Yes, sir.  I've indicated that.
>
> THE COURT: And we accept the plea then as
> given freely and voluntarily.  The sentence is
> as announced and as you have signed to and
> agreed, Mr. Sacco.

Id. at 11-12.

The above-summarized evidence before the Court supports a

finding that Petitioner was competent at the time he entered his

plea.  Petitioner has not presented any evidence whatsoever to show

that he was incompetent at the time of his September 13, 2010 plea,

or at any time after that date.  He has failed to provide any

evidence that he suffered from a mental illness that was so

profound and debilitating that he was unable to file a timely

habeas petition.  In sum, Petitioner has not demonstrated that he

was mentally incapable of filing a federal habeas corpus petition

in a timely manner during the pertinent time period.

Petitioner asserts that manifest injustice will occur if this

Court does not reach the merits of his Petition.  In order to be

entitled to equitable tolling not only must petitioner demonstrate

that some extraordinary circumstance stood in his way, he must show

that he has been pursuing his rights diligently. Propser v. Sec'y of the Fla. Dep't of Corr., No. 2:10-cv-68-FtM-29DNF, 2011 WL 2601244, at *3 (M.D. Fla. June 30, 2011) (Not Reported in F.Supp.2d) (citing Holland v. Florida, 130 S.Ct. 2549, 2560 (2010)). Petitioner has failed to make a showing of due diligence. See id. at *4. Nothing in the record shows that he was attempting to pursue his rights until he filed his pro se Rule 3.850 post conviction motion in the state circuit court on January 12, 2012. Spears v. Warden, 605 F. App'x 900, 905 (11th Cir. 2015) (per curiam) (recognizing that equitable tolling is available only if both extraordinary circumstances and due diligence are established), petition for cert. filed, (U.S. July 6, 2015) (No. 15-5108). As noted in Birt v. Oubre, No. CV 112-048, 2013 WL 395382, at *4 (S.D. Ga. Jan. 4, 2013) (Not Reported in F.Supp.2d), report and recommendation adopted by Birt v. Oubre, 2013 WL 394521 (S.D. Ga. Jan. 31, 2013),

> a petitioner who alleges a mental impairment must still also show that he pursued his rights diligently. See Doe v. United States, 469 F. App'x 798, 800-01 (11th Cir. 2012)(per curiam) (petitioner failed to explain how low IQ "prevented him from exercising due diligence"). While a mental impairment may "yield a very low bar for what level of diligence is reasonable," a petitioner "still bears the burden of showing he did something" in pursuit of his rights. Mvers v. Allen[,] 420 F. App'x 924, 927-28 (11th Cir. 2011)(per curiam), cert. denied, 132 S.Ct. 2771 (2012); see also Murphy v. Hall, CV 109-043, 2009 WL 1579494, at * 1 (S.D.Ga. June 4, 2009) (petitioner who presented documentation showing he had been diagnosed with

13

> schizoaffective disorder failed to show due
> diligence because he "provided no details of
> his efforts to obtain relief, except to state
> that he has been 'diligent in filing petitions
> in state and federal court[.]'").

Here, even assuming a very low bar for the level of diligence required, Petitioner has failed to meet it because he has failed to show that he attempted to do something to pursue his rights and obtain post conviction relief.

To the extent Petitioner claims his untimely filing of the federal Petition is excused because of counsel's unresponsiveness or ineffectiveness, in reliance on the holding in Martinez v. Ryan, 132 S.Ct. 1309 (2012), Petitioner's contention is without merit. As recently noted,

> The Eleventh Circuit has expressly rejected
> petitioner's argument that Martinez applies to
> overcome the statute of limitations bar.
> Arthur v. Thomas, 739 F.3d 611, 630 (11th Cir.
> 2014) (holding that "the Martinez rule
> explicitly relates to excusing a procedural
> default of ineffective-trial-counsel claims
> and does not apply to AEDPA's statute of
> limitations or the tolling of that period.").

Sledge v. Jones, No. 3:14-cv92/MCR/CJK, 2015 WL 521057, at *4 (N.D. Fla. Feb. 9, 2015), appeal filed by Sledge v. Sec'y, Fla. Dep't, No. 15-11048 (11th Cir. Mar. 12, 2015). As a result, the holding in Martinez is inapplicable to this case and does not excuse Petitioner's untimely filing of his Petition. As recently explained in Arthur v. Thomas, 739 F.3d 611, 630 (11th Cir.), cert. denied, 135 S.Ct. 106 (2014):

14

As our discussion shows, the <u>Martinez</u>
rule explicitly relates to excusing a
procedural default of
ineffective-trial-counsel claims and does not
apply to AEDPA's statute of limitations or the
tolling of that period. The § 2254
ineffective-trial-counsel claims in <u>Martinez</u>
and <u>Trevino</u> were not barred by AEDPA's
one-year limitations period. Instead, those §
2254 claims were dismissed under the doctrine
of procedural default because the petitioners
never timely or properly raised them in the
state courts under the states' procedural
rules. At no point in <u>Martinez</u> or <u>Trevino</u> did
the Supreme Court mention the "statute of
limitations," AEDPA's limitations period, or
tolling in any way.

Petitioner appears to argue that the Court's failure to
address the merits of the Petition would result in a fundamental
miscarriage of justice. To invoke the fundamental miscarriage of
justice exception to AEDPA's statute of limitations, a habeas
petitioner must make a credible showing of actual innocence with
new evidence that was not available at the time of his trial. <u>See</u>
<u>McQuiggin v. Perkins</u>, 133 S.Ct. 1924, 1931-32 (2013). To do so, "a
petitioner 'must show that it is more likely than not that no
reasonable juror would have convicted him in the light of the new
evidence.'" <u>Id</u>. at 1935 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327
(1985)). Petitioner has not offered any new reliable evidence that
was not available at the time of his plea. He has not produced
exculpatory scientific evidence, trustworthy eyewitness accounts,
or critical physical evidence that was not available at the time of
his plea. Instead, Petitioner has alleged that there is evidence
of legal innocence, not factual innocence. He relies on his

15

assertion that he is mentally retarded and suffers from mental illness and incapacity due to organic brain damage and other diseases and disorders, and his counsel was ineffective for failing to introduce the evidence of his mental disability, illness and incapacity.   This will not save the day.   Petitioner must show "factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998); <u>see</u> <u>Rozzelle v. Sec'y, Fla. Dep't of Corr.</u>, 672 F.3d 100, 1012-13 (11th Cir. 2012).   Upon review, Petitioner has not made a credible showing of actual innocence.

Because Petitioner has not shown an adequate reason why the dictates of the one-year limitation period should not be imposed upon him, this case will be dismissed with prejudice as untimely.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   Petitioner's Request for Federal Evidentiary Hearing (Doc. 25) is **DENIED**.

2.   Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. 21) is **GRANTED.**

3.   The Petition (Doc. 1) is **DISMISSED with prejudice.**

4.   The **Clerk** shall enter judgment dismissing the Petition with prejudice and dismissing this case with prejudice.

16

5.   If Petitioner appeals the dismissal of the Petition, the Court denies a certificate of appealability.[6]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

6.   The **Clerk** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of August, 2015.

_____
BRIAN J. DAVIS
United States District Judge

sa 7/31
c:
Charles Sacco
Counsel of Record

---

[6] If Petitioner appeals the dismissal of the Petition, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Here, after due consideration, this Court will deny a certificate of appealability.

17